OWENS-CORNING FIBERGLAS CORPORATION, A DELA-
WARE CORPORATION; AND ROSCORP, INC. AND AMER-
ICAN BORATE CORPORATION, DBA AMERICAN
BORATE COMPANY, A CALIFORNIA PARTNERSHIP,
APPELLANTS/CROSS-RESPONDENTS, v. TEXAS COM-
MERCE BANK NATIONAL ASSOCIATION, A
NATIONAL BANKING ASSOCIATION; MOUNTAIN VIEW
HOMES, INC., A NEVADA CORPORATION, RESPONDENTS/
CROSS-APPELLANTS.

No. 18418

October 25, 1988                           763 P.2d 335

*Jolley, Urga, Wirth & Woodbury,* Las Vegas, for Appellants/
Cross-Respondents.

*Jones, Jones, Close & Brown* and *Gary R. Goodheart,* Las
Vegas; *Liddell, Sapp, Zivley & Hill* and *Edward P. Watt,* Austin,
Texas, for Respondents/Cross-Appellants.

## OPINION

*Per Curiam:*

American Borate Company, owner of a mining operation, and Mountain View Homes, Inc., a developer corporation, decided that they would mutually benefit by the construction of a shopping center and apartment complex (Project) in Nye County. Texas Commerce Bank National Association agreed to finance the Project as an accommodation to, and based on the credit strength of, American Borate and Owens-Corning Fiberglas, American Borate's parent corporation. Owens-Corning and American Borate (Guarantors) guaranteed the loan.

The parties entered the following agreements: A Loan Agreement executed by Mountain View and Texas Commerce; an absolute and unconditional Guaranty which Owens-Corning and American Borate executed and delivered to Texas Commerce; a Deed of Trust executed and delivered by Mountain View to Texas Commerce; another Deed of Trust executed and delivered by Mountain View to Owens-Corning in which Owens-Corning subordinated its Deed of Trust to that of Texas Commerce.

The Loan Agreement provided that prior to disbursement of any advances for construction, a Request for Advance form would be signed by both Mountain View and American Borate and submitted to Texas Commerce. Six of the Requests contained xeroxed copies of the signatures of American Borate personnel. These disputed Requests totaled $280,000.

Mountain View defaulted under the terms of the Loan Agreement. Guarantors paid Texas Commerce the sum of $1,220,000, plus accrued interest. However, they refused to pay the remaining $280,000 which Texas Commerce had advanced because they

claimed that Texas Commerce had failed to comply with the Request for Advance procedures of the Loan Agreement.

Owens-Corning and American Borate filed suit against Texas Commerce for declaratory relief and to quiet title to the property subject to the deeds of trust. The trial court declared that Owens-Corning and American Borate were not liable to Texas Commerce for the $280,000, because the xeroxed signatures on the disputed Requests did not comply with the Loan Agreement procedures. But it declared that Texas Commerce's Deed of Trust was senior to the Owens-Corning Deed of Trust as to the $280,000.

The parties appeal both rulings. Additionally, Texas Commerce cross-appeals, claiming that (1) Texas law governs the disputed $280,000 under the Guaranty, (2) the district court abused its discretion in denying Texas Commerce's motion for continuance, and (3) the district court erred in granting summary judgment against Texas Commerce.

## THE GUARANTY

The Loan Agreement expressly provides that Nevada law shall govern all of the Loan Documents, while the Guaranty states that the laws of the United States and Texas shall control its provisions. The district court held that the specific choice-of-law provision of the Loan Agreement controlled over the general provision of the Guaranty. Texas Commerce contends that the lower court erred in applying Nevada law to resolve whether the Guarantors are liable under the Guaranty for the disputed $280,000.

The term "Loan Documents," as defined in the Loan Agreement, does not include the Guaranty within its definition. The definition includes certain specified documents as well as "all other instruments executed by the Borrower. . . ." Since the Borrower (Mountain View) did not execute the Guaranty, and since the Guaranty is not one of the specified documents, the Guaranty is not one of the Loan Documents. As such, the choice-of-law provision in the Loan Agreement does not encompass the Guaranty. Thus, the district court erred in ruling that Nevada law applies because the Guaranty's own choice-of-law provision should govern its disposition. Under the Guaranty, Texas law controls this dispute.

"An absolute guaranty is one which is conditioned solely upon the event of default by the principal obligor of fulfilment [sic] of

the duty the performance of which is guaranteed." McGhee v. Wynnewood State Bank, 297 S.W.2d 876, 883 (Tex.Civ.App. 1956). The Guaranty, by its own provisions, is an "absolute" and "unconditional" guaranty by Owens-Corning and American Borate of payment and performance of Mountain View's obligations.

Texas Commerce argues that the district court erred in ruling that Texas Commerce did not comply with the Request for Advance procedures, and thus these procedures acted as a condition precedent to the Guarantors' liability under the Guaranty. We agree.

The Loan Agreement provides that each written document "required by this Agreement . . . shall be duly executed by the person or persons specified." Since Mountain View submitted six of the Requests over xeroxed copies of the signatures of American Borate personnel, the Requests were not duly executed. However, these facts demonstrate that Mountain View, not Texas Commerce, failed to comply with the Request for Advance procedures. The record presents no evidence that Texas Commerce should have recognized these signatures as not duly executed.

Moreover, the Guaranty provides that it "shall in no way be affected by . . . any invalidity or defect or deficiency in any of the Loan Documents. . . ." The xeroxed signatures are a defect or deficiency contemplated by the language in the Guaranty, and Guarantors waived their right to complain about such a defect. Therefore, we reverse the district court's declaration that the Guarantors are not liable for the disputed $280,000 under the Guaranty.

## THE DEEDS OF TRUST

The Owens-Corning Deed of Trust expressly provides that: "This Deed of Trust is secondary and subordinate to a Deed of Trust executed by Trustor in favor of Texas Commerce Bank National Association of even date herewith. . . ." The district court held that because the Owens-Corning Deed of Trust did not in any way condition its subordination to the Texas Commerce Deed of Trust, a complete and total subordination resulted.

Owens-Corning argues that the subordination agreement applies only to loans made in accordance with the procedures of the Loan Agreement. We disagree. When, as here, a knowledgeable and sophisticated party, in no need of the court's protection, enters an unconditional subordination agreement, this court will

not imply or impute conditions into the agreement. *See* National Bank of Washington v. Equity Investors, 506 P.2d 20 (Wash. 1973) (enforcing an express and unconditional subordination agreement against a knowledgeable and sophisticated party when the party claimed not to understand the implications of the agreement). Therefore, we affirm the district court holding.

Our disposition of these issues renders it unnecessary to discuss Texas Commerce's remaining claims. For the foregoing reasons, we reverse the district court judgment granting Owens-Corning and American Borate relief upon the Guaranty for the remaining $280,000, and affirm the district court's declaration that Texas Commerce's Deed of Trust has priority over Owens-Corning's Deed of Trust.[1]

---

[1]The Honorable E. M. Gunderson, Chief Justice, did not participate in the decision of this matter.